John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
ACLU OF UTAH FOUNDATION, INC.
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

Lee Gelernt*
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor New York, NY
10004
T: (212) 549-267
lgelernt@aclu.org

S. Starling Marshall*
Bruce Bennett*
COVINGTON & BURLING
620 Eighth Avenue
New York, New York 10018-1405
Tel: (212) 841-1000
smarshall@cov.com
bbennett@cov.com

Rebecca G. Van Tassell (Bar No. 14822)
COVINGTON & BURLING
1999 Avenue of the Stars
Los Angeles, California 90067
Tel: (424) 332-4800
rvantassell@cov.com

Christopher Denig*
Jessica Arco*
Bradley Markano*
COVINGTON & BURLING
One City Center
850 10th Street, NW
Washington, D.C. 20001
Tel: (202) 662-6000
cdenig@cov.com
jarco@cov.com
bmarkano@cov.com

Yiye Fu*
COVINGTON & BURLING
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Tel: (650) 632-4700

yfu@cov.com

*Attorneys for Plaintiffs*
**pro hac vice* application forthcoming

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **ABEL RAMIREZ,**<br>**BERENICE RESENDIZ,**<br>**EDUARDO RAMÍREZ,**<br>**ALICIA AMAYA CARMONA,**<br>**CARLOS RAMIREZ,**<br>**J.R.,**<br>**J.R.,**<br>**J.R.,**<br>**and**<br>**K.F.**<br><br>          Plaintiffs,<br><br>v.<br><br><br>**JORDAN REDDISH,**<br>**and JOHN DOE 1-48**<br>**U.S. MARSHALS and ICE AGENTS**<br><br>          Defendants. | Case No. 2:18-cv-00176 JNP<br><br>**COMPLAINT**<br><br>Judge Jill N. Parrish |

Plaintiffs Alicia Amaya Carmona, Berenice Resendiz, Eduardo Ramírez, Abel Ramírez, Carlos Ramírez, J.R., J.R., J.R., and K.F. (collectively, "Plaintiffs"), by and through counsel, hereby complain against Defendants, and state and allege as follows:

**COMPLAINT**

1. This is a civil rights action brought by Plaintiffs Alicia Amaya Carmona, Berenice Resendiz, Eduardo Ramirez, Abel Ramirez, Carlos Ramirez, J.R. (a minor, age 6), J.R. (a minor, age 4), J.R. (a minor, age 2), and K.F. (a minor, age 6) to seek relief for Defendants' violation of the Fourth Amendment of the United States Constitution.

2

2.    On April 10, 2017, Jordan Reddish and John Does 1-48, United States Immigrations and Customs Enforcement ("ICE") agents and United States Marshals ("US Marshals") (collectively, "Defendants") raided Plaintiffs' homes in a residential apartment complex. Armed with assault weapons and pistols and dressed in military-style gear, some Defendants entered Plaintiffs' apartments without consent while others guarded the doors and windows. No Defendant produced any type of warrant, nor did any Defendant obtain consent to enter and search the apartments. Defendants pointed their weapons and screamed at the grandmother (Plaintiff Alicia Amaya Carmona), mother (Plaintiff Berenice Resendiz), and four small children (Plaintiffs J.R. (age 6), J.R. (age 4), J.R. (age 3), and K.F. (age 5 at the time)) they found inside one apartment. Defendants threatened to seize the children and turn them over to state authorities, detained and questioned the family, extensively searched the apartments, and unlawfully detained the grandmother. Despite having found only a harmless grandmother and four small children on the first raid, Defendants returned late the next night and used a battering ram to knock down the door to the apartment. They entered the dark apartment, yelling at the mother and small children sleeping inside, pointed their weapons at them, and forced the mother out of the apartment. Defendants had no reasonable suspicion that Plaintiffs had violated any laws. At no time during either of Defendants' violent intrusions into their homes did any Plaintiff (particularly the young children) pose any threat to Defendants. Plaintiffs fully and peacefully complied with Defendants' commands during both raids.

3.    Defendants violated Plaintiffs' clearly-established constitutional rights by forcibly entering and searching their homes and detaining them, despite never producing a warrant of any kind for the Plaintiffs or having any probable cause, or even reasonable suspicion, to believe any Plaintiff had committed any crime.

4. Moreover, Defendants violated Plaintiffs' clearly-established constitutional rights by using excessive force, employing military-style tactics typically reserved for dangerous felons against a grandmother babysitting her young grandchildren, and coming back the next night to use those same violent methods against the same children and their mother.

5. Plaintiffs seek declaratory judgment, compensatory and punitive damages, an award of attorneys' fees and costs, and such relief as this Court deems equitable and just.

### Jurisdiction and Venue

6. The Court has personal jurisdiction over Defendants because Defendants' acts and omissions giving rise to this lawsuit took place in Heber City, Utah.

7. This Court has subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 because this action seeks redress for the violation of Plaintiffs' rights, which arise under the Constitution of the United States.

8. Plaintiffs' claims for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1391(e)(1) because a substantial part of the events giving rise to this claim occurred in the district and because Plaintiffs reside in the district.

### Parties

10. Plaintiff Carlos Ramirez is 27 years old, is of Mexican descent, and has status under the Deferred Action Childhood Arrival program ("DACA"). Plaintiff Alicia Amaya Carmona is 48 years old, and is of Mexican descent. Plaintiff Berenice Resendiz is 27 years old, is of Mexican descent, and has DACA status. Plaintiff Eduardo Ramierz is 28 years old, is of Mexican descent, and has DACA status. Plaintiff Abel Ramirez, Jr. is 31 years old, is of Mexican descent, and has DACA status. Plaintiff J.R. is currently 6 years old, is a United

States citizen, and is of Mexican descent. Plaintiff J.R. is currently 4 years old, is a United States citizen, and is of Mexican descent. Plaintiff J.R. is currently 2 years old, is a United States citizen, and is of Mexican descent. Plaintiff K.F. is currently 6 years old (but was 5 at the date of the incidents described herein), is a United States citizen, and is of Mexican descent. Plaintiffs were at all relevant times, residents of the Wing Pointe apartment complex in Heber City, Utah.

11. Defendant Jordan Reddish is an ICE agent who personally participated in the unconstitutional searches and seizures of Plaintiffs at their homes on April 10 and April 11, 2017. Reddish participated in and is directly responsible and liable for acts and resulting damages alleged in this complaint.

12. The Doe Defendants are U.S. Marshals and ICE agents who personally participated in the unconstitutional searches and seizures of Plaintiffs and their property at their homes on April 10 and April 11, 2017. Plaintiffs are unaware of the true names of the Doe Defendants, and therefore sue those Defendants by fictitious names. Because Defendants did not identify themselves or wear uniforms, Plaintiffs cannot be certain which agency employed which Defendant. The Doe Defendants are directly responsible and liable for the acts and resulting damages alleged in this complaint. Plaintiffs will amend this complaint to allege the Doe Defendants' true names when they have been ascertained.

## Statement of Facts

### April 10, 2017 Entry, Search, Seizure, and Arrest

13. On April 10, 2017, at approximately noon, Plaintiff Alicia Amaya Carmona was in the apartment belonging to her son Plaintiff Carlos Ramirez and daughter-in-law Plaintiff Berenice Resendiz in Heber City, Utah, babysitting four of her young grandchildren, Plaintiffs J.R. (age 6), J.R. (age 4), J.R. (age 2), and K.F. (then age 5). Some of the children were napping and others were playing.

14. While helping one of the children to the bathroom, Alicia glanced through the blinds, which were partially closed, and saw at least ten men in blue and green vests, with assault weapons and pistols, running through the parking lot outside the building toward the apartment.

15. Terrified, Alicia took the children who were awake and hid in the master bedroom of the apartment. The children who were napping were in the master bedroom already.

16. She used her cell phone to call her son Plaintiff Eduardo Ramirez, who was in his apartment nearby. Then she called her son Plaintiff Carlos Ramirez to tell him that there were armed men outside the apartment. Carlos was with his brother Plaintiff Abel Ramirez Jr. driving home from his first job when he got the call from his mother.

17. Alicia heard loud knocking on the locked front door, but the officers did not otherwise announce themselves.

18. Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, and 12 then opened the door and burst into the apartment.

19. Upon information and belief, Defendants obtained keys from the apartment management without showing a warrant for entry into the apartment, as required.

20. Alicia then heard some of these officers, who were already inside the apartment, shouting in English what she later inferred and understood as "Come out with your hands up!"

21. Alicia had been on the phone with her sons Carlos and Abel Jr. when Defendants burst into the apartment. Carlos and Abel Jr. heard the officers shouting on the phone.

22. Alicia opened the door to the bedroom, and came into the living room with her hands up. Alicia was afraid they were going to harm the children.

6

23. J.R. (age 2), J.R. (age 4), J.R. (age 6), and K.F. (age 5) were terrified, screaming, and crying. The youngest child, just 2 years old, was especially upset.

24. Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, and 12 pointed their assault weapons and pistols at Alicia and the children. The children hid behind Alicia, clutching her legs and clothing.

25. Although Alicia's English proficiency is limited, Defendants spoke to her mostly in English.

26. When Alicia came out into the living room, it was filled with the Defendant agents, all with their weapons drawn.

27. None of the Defendants asked permission to enter the apartment.

28. None of the Defendants asked permission to search the apartment.

29. None of the Defendants told Alicia why they were there, either before or immediately after they entered the apartment.

30. None of the Defendants showed Alicia a warrant of any kind.

31. John Doe 1, who was wearing a blue vest that said "Police," ordered Alicia to exit the apartment in Spanish. She was scared and did as she was told.

32. Reddish separated Alicia from the children, who were terrified and crying.

33. John Doe 1 took the children to a set of stairs that were outdoors near the entrance to the apartment.. He ordered them to sit on the stairs and not to talk to Alicia. They were crying and asking for their grandmother.

34. Alicia asked if she could hug and comfort the youngest child, but Reddish told her she was not allowed to touch the children.

35. The children, who had been napping inside the apartment, were barefoot. Defendants ordered all of the children out of the apartment without coats or shoes. Alicia

7

asked to be allowed to get the children's coats and shoes but Reddish refused to allow her to do so. The temperature was in the 40s that day.

36. The children sat on the stairs with John Doe 1, and told him that they were cold. Despite their pleas, Defendants forced the children to sit outside for over half an hour without proper clothing or footwear.

37. John Does 2 and 3 and Reddish ordered Alicia, the only adult member of the family present, to stand against the wall about 5 to 10 feet away from the stairs where the children were sitting with John Doe 1.

38. John Doe 1 eventually allowed the children to go back into the apartment, but Reddish and John Doe 1 did not allow Alicia to speak with them.

39. At no point did Alicia make any statement or gesture to indicate that she consented to the officers entering the apartment, searching the apartment, taking the children, or interrogating her.

40. At no point did Alicia make any threatening gestures or do anything other than fully comply with the officers' commands.

41. There are only two possible points of egress from the apartment—the front door and the bedroom window facing the parking lot. Alicia saw John Does 13-20 were spread out outside the apartment, including in the parking lot, by the apartment windows, and near the apartment door.

42. Reddish wore a camouflage vest with his name on a patch, and John Doe 1 wore a blue vest with the word "Police." John Does 2, 3, 5-20 were not wearing uniforms, but some wore badges.

43. When Alicia exited the apartment and was ordered up against the wall, Reddish and John Does 2, 3, 5, and 6 surrounded her. They did not allow her to move.

8

44.     At no point did anyone tell Alicia that she was free to leave, or that she had the right to remain silent.

45.     John Doe 1 and Reddish flashed a mugshot of a man in Alicia's face. John Doe 1 asked if Alicia knew the man. Alicia responded that she did not recognize the man.

46.     When Alicia told John Doe 1 and Reddish that she did not recognize the man, John Doe 1 responded that it "would be better if [she] cooperated." Reddish then threatened to take the children away if she did not "cooperate."

47.     Reddish and John Doe 1 asked Alicia where her husband Abel Ramirez, Sr. was. Alicia responded that she did not know.

48.     Abel Ramirez, Sr. was indicted for illegal reentry into the United States on February 8, 2011. Illegal reentry is not a violent crime.

49.     John Doe No. 1 and Reddish told Alicia that the children would be taken away if she did not get her sons to return to the apartment very soon to get their children.

50.     After entering the apartment, ordering Alicia and the children outside, and questioning Alicia for about 15 minutes, and with no reasonable, articulable suspicion that Alicia had violated any immigration laws of the United States or any other laws, Defendants interrogated Alicia about her immigration status.

51.     John Doe No. 1 and Reddish asked Alicia where she was from. Alicia responded.

52.     John Doe 1 and Reddish then asked if Alicia had "papers." Alicia responded.

53.     Reddish then took her fingerprints. Reddish told Alicia he was running her fingerprints through a system to see if she had a criminal record. Reddish then told Alicia that they had run her fingerprints and discovered that she had no criminal record.

54. John Doe 1 and Reddish then told her they were going to arrest her. Alicia asked why they were taking her if she had no criminal record. She told them that the only thing she does is take care of her grandchildren.

55. Reddish and John Doe 1 asked her about her sons. Alicia said Carlos and Abel Jr. had just gotten out of work.

56. Alicia asked Reddish and John Doe 1 if they were going to take the children and the officers said they were. She asked why they would take the children if their parents could take care of them.

57. Carlos had called Alicia's cell phone several times without answer after their initial phone call was disconnected. Alicia could not answer her phone while detained by Reddish and John Does 1, 2, 3, 5, and 6. Carlos kept calling, and Reddish eventually answered the phone.

58. Reddish told Carlos that he was taking his mother with him. Carlos asked why Alicia was being detained. Reddish responded that it was related to immigration status. Reddish also said that agents would take the children if no one was home to care for them in fifteen minutes. Carlos said that he was on his way home and would be there as quickly as he could.

59. Alicia's son Eduardo arrived at the apartment building after receiving a phone call from his mother. He had been sleeping in his apartment nearby because he works night shifts. Defendants had knocked on his door a few minutes earlier, but he had not responded.

60. Defendants had no reasonable, articulable suspicion that Eduardo had violated the immigration laws of the United States or any other laws.

61. When Eduardo approached the apartment building, he saw Reddish and John Does 2 and 3 surrounding his mother. John Doe 1 was in the apartment with the children. The other officers were all around the apartment building.

10

62. When Eduardo approached Reddish and John Does 2 and 3, Reddish asked him if he was there "for us" and Eduardo replied "yes." Reddish then asked him if he had "papers." Eduardo believed Reddish was asking if Eduardo was a U.S. citizen, so Eduardo responded "no."

63. Reddish immediately placed handcuffs on Eduardo so tightly that Eduardo felt faint with pain. The marks from this injury were visible for over a month later.

64. Eduardo told Reddish that the handcuffs were on too tight, and asked that he loosen them. Reddish responded that they are handcuffs and "they do hurt." Eduardo asked if he could sit on the stairs because he felt faint.

65. Carlos and Abel Jr., arrived home from work and found Eduardo in handcuffs. Alicia was surrounded by officers near the door to the apartment, scared and crying.

66. Carlos asked Reddish why Eduardo was handcuffed, because Eduardo has DACA status.

67. Upon searching Eduardo's pockets, Reddish found Eduardo's limited term driver's license identification and accused Eduardo of lying when Eduardo said he did not have "papers."

68. Reddish did not remove Eduardo's handcuffs immediately after finding his identification, and instead kept him in handcuffs for over half an hour. When Reddish finally did remove Eduardo's handcuffs, he yanked Eduardo around by the chain connecting the handcuffs to reach the lock.

69. While handcuffed, Eduardo asked Reddish if he could see a warrant and Reddish responded "don't worry about it." Eduardo asked to see any paperwork three times, but Reddish refused to show him anything.

11

70. Carlos asked why they had arrested his mother when she had no criminal history. Reddish responded that they were looking for his father, but they were taking his mother because they "had to take somebody."

71. Reddish told Carlos that he should "give up his dad" to save his mom. Carlos asked Reddish to show him a warrant and Reddish did not reply. Reddish never showed the Plaintiffs a warrant.

72. John Doe 2 approached Abel Jr. with John Does 13 and 14 when he got out of the car at the apartment building. He asked to see Abel Jr.'s identification. Abel Jr. responded that his identification was inside his apartment.

73. John Doe 2 asked Abel Jr. where his father was. Abel Jr. asked why they wanted to know and asked if they had a warrant. John Doe 2 said he couldn't show the warrant to Abel Jr. because it did not relate to Abel Jr.

74. Abel Jr. asked Reddish if he could see their warrant. Reddish refused to show him one.

75. Abel Jr. tried to walk towards Carlos's apartment but John Doe 1 told him "stay put."

76. Carlos had called his wife, Berenice, after receiving the call from his mother. Berenice was working at her job in Park City, Utah, and immediately left her shift when she received the call from Carlos.

77. When Berenice approached the door of her apartment. John Doe 1 came out of the apartment holding J.R.-age 2 in his arms. J.R.-age 2 was crying hysterically and John Doe 1 told Berenice that he could not "control" J.R-age 2. He put J.R.-age 2 down on the ground outside of the apartment and Berenice picked her up. John Doe 1 told Berenice not to use her phone, come near the other children, or talk to Carlos, Abel Jr., Alicia, or Eduardo.

78. After a while, the agents finally allowed Berenice to go into her apartment with her other children. When she entered she found them with John Does 15, 16, and 17. Her children were crying and said the officers would not let them be with their grandmother.

79. The family had called a babysitter to come to the apartment in case they could not arrive home within the time Reddish said they needed to before he would call child services. The babysitter arrived at the apartment complex around this time and left with K.F.-age 5.

80. Reddish said if the family could not locate Abel Sr., he was going to arrest Alicia.

81. Carlos said he did not know where his father was.

82. At no point did Defendants inform Plaintiffs that they were free to go or that they had the right not to answer their questions.

83. Reddish took Alicia to the parking lot. He allowed Carlos to hug her goodbye but would not let the grandchildren or Berenice, Eduardo, or Abel Jr. near her.

84. Reddish handcuffed Alicia and put her in a white Chevy Avalanche vehicle.

85. Carlos asked for Reddish's business card, in case he found any information about his father. Reddish gave him a business card and told him to call before midnight.

86. When Abel Jr. returned to his apartment he noticed that Defendants had searched it. He could tell that Defendants had been in the apartment because the beds were unmade, the cabinets were all open, and many items were on the floor, including K.F.'s toys.

87. Upon information and belief, John Does 30-33 entered and searched Abel Jr.'s apartment. At no time did Abel Jr. or any member of his household consent to this search.

88. Reddish had not allowed Carlos and Berenice into their apartment, where Alicia had been watching the children when the agents burst in, since they had returned home. After Defendants left with Alicia, Carlos, Berenice, and their children returned to their

13

apartment to find Defendants had ransacked it. Defendants had strewn blankets and clothes everywhere, extensively searched the closets, knocked the closet doors off their hinges, and the rummaged the drawers and beds.

89. In addition to the condition of the apartment, Carlos and Berenice found that $3,000 in cash was missing from the pocket of a coat hanging in the bedroom. Alicia had been saving that money to pay for legal assistance pertaining to an immigration visa application.

90. Upon information and belief, Defendants took $3,000 in cash from Carlos and Berenice's apartment with no just cause to do so.

91. Upon information and belief, Defendants obtained keys to the family's apartments from the apartment management and used those keys to enter without consent of the family.

<u>April 11, 2017 Raid, Search, and Seizure</u>

92. Early the next morning, on April 11, 2017, Carlos called Reddish and spoke to him on the phone twice. During both conversations, Reddish indicated that he was willing to "trade" Alicia for Abel Sr. Carlos responded that he did not know where his father was, and pleaded with Reddish to let his mother go because she had done nothing wrong. Carlos told Reddish that his mother had medical issues and that she was only taking care of her grandchildren. Reddish responded that he needed to take someone and that he was willing to let Alicia "out the backdoor" of the jail, if Carlos could take him to Abel Sr.

93. Later that evening, Reddish and Carlos exchanged text messages. Carlos asked where his mother had been moved. Reddish continued to ask about Abel Sr. He stressed that he would only have control of Alicia's fate for a short while longer. When Carlos did not respond, Reddish texted "congratulations." Carlos understood this to mean that his mother

14

was going to be retained in custody, but later came to understand that it meant the agents would be coming back to his apartment that night.

94.     Shortly after Reddish's last text message, Berenice was in her bedroom with her children (J.R.-age 2, J.R.-age 4, and J.R.-age 6) at night, watching television. No one else was home.

95.     At about 10:00 p.m., Berenice saw flashlights shining in the window.

96.     Defendants did not announce themselves or ask to enter at that point. Berenice heard some whispering from outside of the apartment.

97.     Berenice then heard knocking and Defendants yelling "Police, we have a warrant. Open up!"

98.     Berenice was terrified. The children had woken up and were also terrified. They were all crying.

99.     Berenice exited her bedroom and came into the living room.

100.    As Berenice was opening the bedroom door, Reddish, John Doe 1, 2, 3, 4, 21, 22, and 23 broke down the front door of the apartment down with a battering ram.

101.    The apartment was dark and Reddish, John Does 1, 2, 3, 4, 21, 22, and 23 shone flashlights in the faces of Berenice and her children. John Doe 4 aimed his assault rifle at Berenice and three children. John Doe 23 carried a battering ram. Reddish and John Does 1, 2, 3, 21, and 22 had their weapons drawn and pointed at Berenice and the children.

102.    John Doe 4 yelled at Berenice to get out of the apartment. He ordered her to exit without her children. She had been in bed and was wearing sweatpants and a tank top and did not have shoes on.

103.    Berenice did as John Doe 4 directed and exited the apartment. It was cold outside. The door was badly damaged and lay open.

104. Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 kept the children inside the apartment while ordering Berenice out.

105. More Defendants were outside of the apartment and in the parking lot. Many were armed with assault weapons. There was a line of officers' cars stretching the entire length of the parking lot. John Does 24 and 25 were standing outside of the windows of Carlos and Berenice's apartment, next to the parking lot, with flashlights. John Does 26 and 27 were standing outside of the windows of Abel Jr.'s apartment, next to the parking lot, flashing flashlights in the bedroom window. John Does 34-48 were in the parking lot surrounding the apartment complex.

106. There were Defendants at the front doors and near the windows facing the parking lot of both apartments. These doors and windows were the only two points of egress from the apartments.

107. Berenice was crying and did not want to leave her children, but she was scared and did what she was told.

108. Berenice exited the apartment and stood by the door. Reddish, John Does 1, 2, 3, and 4 surrounded her.

109. Berenice asked John Doe 4 if she could go back inside and get her children. He said no.

110. Berenice reached for her phone to call her husband and tell him to come home. Reddish told her she could not use her phone. She asked if she could call her lawyer. Reddish said no.

111. Abel Jr. lived in the apartment adjacent to Berenice and Carlos. When he heard the commotion, he came to the door of his apartment to check on his family.

16

112. When Abel Jr. opened his door, John Does 2, 28, and 29 walked into his doorway. Abel Jr. said his daughter was asleep inside. They asked to enter and Abel Jr. said they could not. John Doe 2 put his foot in the doorway and did not let him shut the door.

113. John Doe 2 would not let Berenice and Abel Jr. talk to one another.

114. John Doe 2 ordered Abel Jr. out of his apartment, directed him to stand by a car in the parking lot, and said "stay here."

115. Abel Jr. asked why the officers had brought so many assault weapons this time when they knew there were small children in the apartments. John Doe 2 said "Oh little Abel is scared of big guns."

116. When Abel Jr. opened his door, John Doe 4 and John Doe 21 pushed Berenice away from where she was standing and John Doe 4 pulled Berenice's arm, forcing her to the stairs.

117. John Does 22 and 23 were in Berenice and Carlos's apartment alone with J.R.-age 2, J.R.-age 4 and J.R.-age 6 alone while Berenice, their mother, was outside. After 10 minutes, J.R.-age 2 and J.R.-age 6 came out of the apartment. J.R.- age 4 was still inside with Defendants without his parents.

118. Berenice asked John Doe 4 if she could see a warrant. He responded that they did not need a warrant. Berenice stated that she heard them shouting that they had a warrant. Again, John Doe 4 responded "we don't need a warrant."

119. Berenice asked Reddish if he had a warrant, and Reddish responded that they "left it in the office."

120. John Doe No. 4 and Reddish spoke over Berenice, preventing her from asking further about her children, or asking again to see the warrant. They demanded she tell them the whereabouts of Abel Sr.

17

121. When Berenice responded that she did not know where her father-in-law was, Reddish and John Doe 4 said "your mother-in-law will be in jail for a long time if you do not say something." They told her that she should work out a "deal" to get her mother-in-law released.

122. Berenice asked again to be allowed to call Carlos. Reddish said they just saw his car on the road and they knew he wasn't there.

123. Reddish and John Doe 4 repeatedly asked Berenice where Abel Sr. was, and she repeatedly responded that she did not know. Reddish and John Doe 4 then threatened that they were going to arrest her husband and his brothers and take their children if she did not tell him where Abel Sr. was.

124. At no point did any of the Defendants tell Berenice that she was free to go or that she had the right to remain silent.

125. At no point did Berenice or Carlos grant Defendants permission to enter the apartment, or consent to the apartment being searched.

126. Reddish told Berenice she could not go back in the apartment until they were done searching.

127. When John Doe 4 finally let Berenice go back into the apartment, she found that Defendants had thrown blankets from the bed to the floor, taken the closet doors off the hinges, and opened drawers.

128. Berenice then called Carlos and asked him to come home.

129. When Carlos arrived at the apartment complex, he saw Defendants' cars stretching the length of the parking lot. Defendants who were standing by their cars pointed their weapons at Carlos as he drove in.

130. When Carlos arrived, Reddish would not let him approach Berenice. Reddish, John Doe 2, and John Doe 4 kept each of the adults separated from one another. Reddish

approached Carlos as he was parking his car. Reddish again asked Carlos where his father was. Carlos responded that he hadn't heard from his father.

131. Carlos saw from the parking lot that Defendants had broken his door down. He asked Reddish if they had a warrant this time, because no one showed him one the previous day. Reddish responded that Carlos was "watching too much Univision," and that he did not need a warrant to break down a door.

132. Eduardo walked from his apartment on the other side of the complex to Carlos and Berenice's apartment. He walked past the line of cars and two Defendants holding assault weapons at the corner of the parking lot. He arrived at Carlos and Berenice's apartment and saw the door broken open. He walked towards the door, as if to enter, but John Doe 2 told him he could not go inside.

133. John Doe 4 pointed an assault weapon at Eduardo, when he approached.

134. Eduardo asked Reddish if he had a warrant, and Reddish replied that he could not show Eduardo a warrant because it did not pertain to him.

135. Reddish asked Eduardo where his father was and Eduardo responded that he did not know.

136. Eduardo asked Reddish why he had come for other members of his family when they had not committed any crimes. Even though four of the Plaintiffs are citizens of the United States, and Carlos, Berenice, Abel Jr., and Eduardo have DACA status, Reddish responded that all of them were criminals because they were in this country illegally.

137. John Doe 3 also responded, saying that Eduardo and his family should "go back to Mexico." Eduardo responded that they could not return to Mexico because they had been targeted by the cartels. John Doe 2 called them cowards.

19

138. Abel Jr. tried to interject, saying that they had permission to work so the officers should know they were not criminals. John Doe 2 told Abel Jr. and Eduardo not to be "bitches."

139. Reddish finally allowed Carlos to go inside his apartment with his wife and children.

140. Then Reddish allowed Abel Jr. and Eduardo to go inside with Carlos and Berenice to discuss the situation.

141. After the family members spoke with one another, Reddish came inside with John Does 2 and 3.

142. John Does 2 and 3 repeatedly stated that they could have ICE release Alicia, if the family gave them information on Abel Sr.

143. John Doe 2 said he would talk to Carlos like a "grown ass man" and stated that Alicia "did not have to go down for this."

144. Reddish and John Does 2 and 3 were cursing and getting angry. The children were present and scared. Berenice was crying.

145. At no point did Defendants inform Plaintiffs that they were free to go or that they had the right not to answer their questions.

146. Reddish stated to Carlos that arresting a "grandmother" with no criminal record at all was "not [his] proudest moment." However, he explained that he did it because the family thought he was bluffing.

147. John Doe 2 told the family that they were wasting their money on a lawyer because Alicia would never be able to win "against ICE" with "Trump's new law." He said that the only way to get her out of this situation was to give up Abel Sr. He stated that the family was wasting all of their money by hiring a lawyer, and they would go "bankrupt" trying to fight Alicia's arrest.

20

148. By the time the Defendants left, it was almost midnight. Defendants had so badly damaged Carlos and Berenice's door that it would not close. Defendants had again ransacked their home. Carlos and Berenice closed the door as much as they could and put a couch in front of it so they could stay in the apartment that night.

149. Carlos, Berenice, and their children were upset and crying the whole night. No one slept.

150. Because of the damage to the door and the traumatic events that occurred at their Wing Pointe apartment, Carlos and Berenice had to move their family to another residence.

151. Plaintiffs have suffered ongoing injuries and other damages related to the two raids.

<u>Alicia's Detention</u>

152. After Defendants detained her on April 10, Alicia was taken to the Summit County Jail.

153. Alicia spent several hours alone in a cold room. No one spoke to her.

154. The next morning, Alicia was awoken at 5:00 am and took her to the ICE office in Salt Lake City.

155. Reddish and John Doe 1 were there and told Alicia that they were going to move her to a detention center in Logan.

156. Reddish and John Doe 1 gave Alicia some papers in English, but she did not sign them.

157. Reddish and John Doe 1 laughed at Alicia. Reddish made a joke saying, "look at the abuela [grandmother]," and they laughed.

158. Reddish and John Doe 1 asked Alicia where her husband was and when was the last time she saw him.

159. During another meeting at the ICE office, John Doe 2 came out from behind a mirrored glass after Alicia refused to sign papers in English that she did not understand.

160. John Doe 2, using John Doe 1 to translate, said Alicia needed to sign the papers or she would spend the rest of her life in jail, and that her children's DACA status would be terminated and she would never see them again. He cursed and yelled at her.

161. After John Doe 2 made these intense threats, Alicia signed the papers.

162. Reddish called Carlos on April 12 and asked again if he had heard from his father. Carlos said he had not and asked to speak to Alicia. Alicia told Carlos that they were cursing at her and treating her badly. She told him she was scared.

163. After that Alicia was transferred to Logan, Utah and later to a facility in Colorado.

164. Eventually, Alicia's family was able to get her released on bail.

## LEGAL CLAIMS

### Allegations Applying to Counts I-XXII (The Fourth Amendment Claims)

165. Plaintiffs seek an award of compensatory and punitive damages and declaratory relief against Defendants, individually, as listed in Counts I-XXII below pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as a result of their actions which deprived Plaintiffs of their constitutional rights.

166. Defendants' actions as alleged herein violated Plaintiffs' clearly-established, constitutionally-guaranteed rights to be free from unreasonable and unlawful searches and seizures, and to be free from the use of excessive force.

167. Defendants' violation of all Plaintiffs' Fourth Amendment rights was willful, egregious, and done with deliberate indifference to Plaintiffs' clearly-established constitutional rights.

168. No Defendant ever showed Plaintiffs a warrant of any kind and on information and belief, the reason they did not show a warrant is because none of them obtained any kind of warrant. Even if Defendants had some type of warrant, however, the manner in which they executed that warrant was unlawful and unreasonable and violated Plaintiffs' Fourth Amendment rights.

169. As a result of Defendants' actions, all Plaintiffs suffered hardship, including but not limited to humiliation, emotional distress, loss of liberty, loss of income, monetary damages, and violations of their constitutional rights.

**Count I: Unreasonable Search and Seizure - Unlawful and Unreasonable Entry
and Search of Carlos and Berenice's Home on April 10, 2017
(Against Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17)**

170. Plaintiffs hereby incorporate the allegations above as if fully made herein.

171. Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 entered Plaintiffs Carlos and Bernice's home on April 10, 2017 without consent, a warrant that justified the violent entry and search, or circumstances that justified a warrantless search. Upon entry, they found Plaintiffs Alicia, J.R. -age 2, J.R.- age 4, and J.R.-age 5, and K.F.-age 5 inside.

172. Despite having no grounds to conduct a warrantless entry and search, Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 entered Plaintiffs' home on April 10, 2017 and conducted extensive searches that included opening drawers, unmaking beds, and throwing belongings on the ground.

173. Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches.

174. As a result of this conduct, Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 are liable for Plaintiffs' injuries.

**Count II: Unreasonable Search and Seizure - Unlawful and Unreasonable Entry and Search of Abel Jr.'s Home on April 10, 2017**
**(Against Defendants John Does 30-33)**

175.    Plaintiffs hereby incorporate the allegations above as if fully made herein.

176.    Upon information and belief, Defendants John Does 30-33 entered Plaintiff Abel Jr.'s home on April 10, 2017 without consent, a warrant that justified the search, or circumstances that justified a warrantless search.

177.    Despite having no grounds to conduct a warrantless entry and search, Defendants entered Abel Jr.'s home on April 10, 2017 and conducted extensive searches that included opening drawers, unmaking beds, and throwing belongings on the ground.

178.    John Does 30-33 violated Abel Jr.'s Fourth Amendment right to be free from unreasonable searches.

179.    As a result of this conduct, John Does 30-33 are liable for Plaintiff's injuries.

**Count III: Unreasonable Search and Seizure - Unlawful Seizure of Alicia on April 10, 2017**
**(Against Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17)**

180.    Plaintiffs hereby incorporate the allegations above as if fully made herein.

181.    Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 unlawfully entered Plaintiffs Carlos and Bernice's home on April 10, 2017, shouted at Plaintiffs Alicia, J.R. -age 2, J.R.- age 4, and J.R.-age 5, and K.F.-age 5, to come out with their hands up, pointed their guns at the grandmother and children, and ordered them to get out of the apartment. They separated the children from their grandmother and would not allow them to go back inside the apartment.

182.    Reddish and John Doe 1 interrogated Alicia, and refused to let her use her phone, or to get shoes and coats for the children.

183.    Reddish and John Does 1, 5, and 6 surrounded Alicia in a small area outside of the apartment door, wearing bullet proof vests and carrying weapons.

24

184. Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 intentionally used physical force and show of authority to restrain Alicia's movement.

185. Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 had no reasonable basis to suspect that Alicia had violated any laws when they seized her.

186. Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures.

187. As a result of this conduct, Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 are liable for Plaintiff's injuries.

**Count V: Unreasonable Search and Seizure - Unlawful Seizure of J.R.-age 2, J.R.-age 4, J.R.- age 6, and K.F.-age 5 on April 10, 2017**
**(Against Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17)**

188. Plaintiffs hereby incorporate the allegations above as if fully made herein.

189. Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 unlawfully entered Plaintiffs Carlos and Bernice's home on April 10, 2017, shouted at Plaintiffs Alicia, J.R. -age 2, J.R.- age 4, and J.R.-age 5, and K.F.-age 5, to come out with their hands up, pointed their guns at the grandmother and children, and ordered them to get out of the apartment. They separated the children from their grandmother and would not allow them to go back inside the apartment. John Doe 1 picked up J.R.-age 2 and carried her.

190. Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 intentionally used physical force and show of authority to restrain the children's movement.

191. Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 had no reasonable basis to suspect that the children had violated any laws.

192. Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizures.

193. As a result of this conduct, Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 are liable for Plaintiffs' injuries.

**Count III: Unreasonable Search and Seizure - Excessive Force in Seizure of Alicia, J.R.-age 2, J.R.-age 4, J.R.- age 6, and K.F.-age 5 April 10, 2017**
**(Against Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17)**

194. Plaintiffs hereby incorporate the allegations above as if fully made herein.

195. Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 unlawfully entered Plaintiffs Carlos and Bernice's home on April 10, 2017, shouted at Plaintiffs Alicia, J.R. -age 2, J.R.- age 4, and J.R.-age 5, and K.F.-age 5, who were inside the home, and pointed their guns at the grandmother and four small children.

196. Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 use of guns, separating the grandmother from her grandchildren, forcing the grandmother and children to exit the home without proper clothing in the cold, and picking up J.R.-age 2, was an excessive use of force, especially given that the grandmother and children posed no threat to the officers, and made no attempt to escape or resist, and the alleged subject of the officers' efforts, Abel Sr., was wanted for a non-violent crime.

197. Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 had no reasonable suspicion that Alicia or the children had committed any crimes when they entered the apartment.

198. Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizures.

199. As a result of this conduct, Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 are liable for Plaintiffs' injuries.

**Count VI: Unreasonable Search and Seizure - Unlawful Seizure of Eduardo on April 10, 2017**
**(Against Defendant Reddish)**

200. Plaintiffs hereby incorporate the allegations above as if fully made herein.

201. Defendant Reddish used a show of force to restrict Eduardo's movement, and questioned him with no reasonable suspicion that he had committed a crime. Reddish placed him in handcuffs and searched his person  Reddish refused to take Eduardo out of the extra-tight cuffs for some time even when it was clear that Eduardo had DACA status. At no time did Eduardo resist or do anything other than comply with Reddish's commands. Eduardo posed no threat to Reddish.

202. Reddish violated Eduardo's Fourth Amendment right to be free from unreasonable searches and seizures.

203. As a result of this conduct, Reddish is liable for Eduardo's injuries.

**Count VII: Unreasonable Search and Seizure - Use of Excessive Force in Seizure of Eduardo on April 10, 2017**
**(Against Defendant Reddish)**

204. Plaintiffs hereby incorporate the allegations above as if fully made herein.

205. Defendant Reddish used a show of force to restrict Eduardo's movement, and questioned him with no reasonable suspicion that he had committed a crime. Reddish placed him in handcuffs using unreasonable force in doing so, and yanked Eduardo around by the chain between the handcuffs.   At no time did Eduardo resist or do anything other than comply with Reddish's commands. Eduardo posed no threat to Reddish.

206. Reddish placed handcuffs on Eduardo so tightly that Eduardo was injured and had marks on his wrists for a month. Reddish refused to take Eduardo out of the extra-tight cuffs for some time even when it was clear that Eduardo had DACA status.

207. Reddish violated Eduardo's Fourth Amendment right to be free from unreasonable seizures.

208. As a result of this conduct, Reddish is liable for Eduardo's injuries.

**Count VIII: Unreasonable Search and Seizure - Unlawful Seizure of Berenice
on April 10, 2017
(Against Defendant John Doe 1)**

209.    Plaintiffs hereby incorporate the allegations above as if fully made herein.

210.    John Doe 1 used a show of force to restrict Berenice's movement by ordering her where to stand, refusing to let her enter the apartment, and refusing to let her speak to the other family members.

211.    John Doe 1 had no reasonable suspicion that Berenice had violated any laws, and Berenice posed no threat to John Doe 1 or any other officer. Berenice fully complied with all of John Doe 1's commands.

212.    John Doe 1 violated Berenice's Fourth Amendment right to be free from unreasonable seizures.

213.    As a result of this conduct, John Does 1 is liable for Berenice's injuries.

**Count IX: Unreasonable Search and Seizure - Unlawful Seizure of Carlos
on April 10, 2017
(Against Defendant Reddish)**

214.    Plaintiffs hereby incorporate the allegations above as if fully made herein.

215.    Defendant Reddish used a show of force to restrict Carlos's movement, interrogated him, ordered him to stand in a particular place, refusing to let him go into the apartment to see his children, and refusing to allow him to speak to the other family members.

216.    Reddish had no reasonable suspicion that Carlos had violated any laws, and Carlos posed no threat to Reddish or any other officer. Carlos complied with all of Reddish's commands.

217.    Reddish violated Carlos's Fourth Amendment right to be free from unreasonable seizures.

218.    As a result of this conduct, Reddish is liable for Carlos's injuries.

## Count X: Unreasonable Search and Seizure - Unlawful Seizure of Abel Jr. on April 10, 2017
### (Against Defendants John Does 1, 2, 13, and 14)

219. Plaintiffs hereby incorporate the allegations above as if fully made herein.

220. Defendants John Does 1, 2, 13, and 14 used a show of force to restrict Abel Jr.'s movement, interrogated him, refused to let him speak to the other family members or go into his apartment.

221. John Does 1, 2, 13, and 14 had no reasonable suspicion that Abel Jr. had violated any laws, and Abel Jr. posed no threat to John Does 1, 2, 13, and 14 or any other officer. Abel Jr. complied with all of the officers' commands.

222. John Does 1, 2, 13, and 14 violated Abel Jr.'s Fourth Amendment right to be free from unreasonable seizures.

223. As a result of this conduct, John Does 1, 2, 13, and 14 are liable for Abel Jr.'s injuries.

## Count XI: Unreasonable Search and Seizure - Excessive Force in Seizure of Plaintiffs on April 10, 2017
### (Against Defendants Reddish John Does 1, 2, 3, 5-20)

224. Plaintiffs hereby incorporate the allegations above as if fully made herein.

225. Reddish and John Does 1, 2, 3, and 5-20.

226. Reddish and John Does 1, 2, 3, and 5-20, all armed and in military style gear, surrounded Plaintiffs' homes, all ostensibly in hopes of finding a man wanted for a non-violent crime.

227. Reddish and John Does 1, 2, 3, and 5-20 violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizures.

228. As a result of this conduct, Reddish and John Does 1, 2, 3, and 5-20 are liable for Plaintiffs' injuries.

29

<u>**Count XII: Unreasonable Search and Seizure - Unlawful Seizure of Property**</u>
<u>**on April 10, 2017**</u>
**(Against Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17)**

229. Plaintiffs hereby incorporate the allegations above as if fully made herein.

230. Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 entered Plaintiffs Carlos and Bernice's home on April 10, 2017 without consent, a warrant that justified the search, or circumstances that justified a warrantless search.

231. Despite having no grounds to conduct a warrantless search, Defendants Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 entered Plaintiffs' home on April 10, 2017 and conducted extensive searches that included opening drawers, unmaking beds, and throwing belongings on the ground.

232. Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 took $3,000 in cash belonging to Alicia from the apartment, without giving the family any paperwork to indicate that property was being removed as evidence.

233. Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 violated Plaintiffs' Fourth Amendment right to be free from unlawful seizures.

234. As a result of this conduct, Reddish and John Does 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, and 17 are liable for Plaintiffs' injuries.

<u>**Count XIII: Unreasonable Search and Seizure- Unlawful and Unreasonable Search of**</u>
<u>**Carlos and Berenice's Home on April 11, 2017**</u>
**(Against Defendants Reddish and John Does 1, 2, 3, 4, 21, 22, and 23)**

235. Plaintiffs hereby incorporate the allegations above as if fully made herein.

236. Defendants Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 entered Plaintiffs Carlos and Bernice's home on April 11, 2017 by using a battering ram to break down the door and pointing their weapons at Berenice and J.R.-age 2, J.R.-age 4, and J.R.-age 6, who were inside the dark apartment. They did so without consent, a warrant that justified the search, or circumstances that justified a warrantless search.

30

237. Despite having no grounds to conduct a warrantless search, Defendants Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 entered Plaintiffs' home on April 11, 2017 and conducted extensive searches that included opening drawers, unmaking beds, throwing belongings on the ground, and breaking closet doors off their hinges.

238. Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches.

239. As a result of this conduct, Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 are liable for Plaintiffs' injuries.

**Count XIV: Unreasonable Search and Seizure- Unlawful Seizure of J.R.-age 2, J.R.- age4, J.R.-age 6 on April 11, 2017**
**(Against Defendants Reddish and John Does 1, 2, 3, 4, 21, 22, and 23)**

240. Plaintiffs hereby incorporate the allegations above as if fully made herein.

241. Defendants Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 entered Plaintiffs Carlos and Bernice's home on April 11, 2017 by using a battering ram to break down the door and pointing their weapons at Berenice and J.R.-age 2, J.R.-age 4, and J.R.-age 6, who were inside the dark apartment. They did so without consent, a warrant that justified the search, or circumstances that justified a warrantless search.

242. Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 used a show of authority to restrict the children's movement, and separated the children from their mother. The children were ordered to stay in the apartment with the officers, while their mother was ordered to leave the apartment.

243. Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 had no reasonable suspicion that the children had committed any crime, and the children posed no threat to Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 or any of the other officers. The children fully complied with the officers' commands.

31

244.     Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 violated the children's Fourth Amendment right to be free from unreasonable seizures.

245.     As a result of this conduct, Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 are liable for the children's injuries.

<u>**Count XV: Unreasonable Search and Seizure- Unlawful Seizure of Berenice on April 11, 2017**</u>
**(Against Defendants Reddish and John Does 1, 2, and 4)**

246.     Plaintiffs hereby incorporate the allegations above as if fully made herein.

247.     Defendants Reddish and John Does 1, 2, and 4 used physical force and show of authority to restrict Bernice's movement and interrogated her. They ordered her to leave her children and exit the apartment and, first, stand by the door, then physically forced her to move towards the stairs. They forbade her to use her phone or speak with her children, and they interrogated her.

248.     Defendants Reddish and John Does 1, 2, and 4 had no reasonable suspicion that Berenice had violated any laws, especially considering that they had interrogated her the previous evening, and Berenice posed no threat to Defendants Reddish and John Does 1, 2, and 4 or any other officer. Bernice fully complied with the officers' commands.

249.     Defendants Reddish and John Does 1, 2, and 4 violated Berenice's Fourth Amendment right to be free from unreasonable seizures.

250.     As a result of this conduct, Defendants Reddish and John Does 1, 2, and 4 are liable for Berenice's injuries.

<u>**Count XVI: Unreasonable Search and Seizure- Excessive Force in Seizures of Berenice, J.R.-age 2, J.R.-age 4, J.R.- age 6 on April 11, 2017**</u>
**(Against Defendants Reddish and John Does 1, 2, 3, 4, 21, 22, and 23)**

251.     Plaintiffs hereby incorporate the allegations above as if fully made herein.

252.     Defendants Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 entered Plaintiffs Carlos and Bernice's home on April 11, 2017 by using a battering ram to break down the

door and pointing their weapons at Berenice and J.R.-age 2, J.R.-age 4, and J.R.-age 6, who were inside the dark apartment. They did so without consent, a warrant that justified the search, or circumstances that justified a warrantless search.

253. Despite having no grounds to conduct a warrantless search, Defendants Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 entered Plaintiffs' home on April 11, 2017 and conducted extensive searches that included opening drawers, unmaking beds, throwing belongings on the ground, and breaking closet doors off their hinges.

254. Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 had no reasonable suspicion that Berenice and the children had committed a crime, or that anyone inside the apartment posed a threat to the officers, especially because the officers had searched the apartment the previous day and had interrogated Berenice.

255. Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizures.

256. As a result of this conduct, Reddish and John Does 1, 2, 3, 4, 21, 22, and 23 are liable for Plaintiffs' injuries.

### Count XVII: Unreasonable Search and Seizure- Excessive Force in Seizure on April 11, 2017
### (Against Defendants Reddish and John Does 1-4, 21-29, 34-48)

257. Plaintiffs hereby incorporate the allegations above as if fully made herein.

258. Reddish and John Does 1-4, 21-29, 34-48.

259. Reddish and John Does 1-4, 21-29, 34-48 surrounded Plaintiffs' apartments armed and in military-style gear, all ostensibly in hopes of finding a man wanted for a non-violent crime. This was especially unreasonable in light of the fact that during the raid the day before they had found no weapons, Plaintiffs had cooperated fully with their commands, and Plaintiffs had posed no threat to Defendants. The line of their cars stretched throughout the entire apartment complex parking lot.

260. Reddish and John Does 1-4, 21-29, 34-48 violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizures.

261. As a result of this conduct, Reddish and John Does 1-4, 21-29, 34-48 are liable for Plaintiffs' injuries.

**Count XVIII: Unreasonable Search and Seizure- Unreasonable Seizure of Eduardo on April 11, 2017**
**(Against Defendant John Does 2 and 4)**

262. Plaintiffs hereby incorporate the allegations above as if fully made herein.

263. John Does 2 and 4 used a show of authority to restrict Eduardo's movements, John Doe 4 pointed his assault weapon at Eduardo, and John Doe 2 ordered him to stand in a particular place and refused to let him speak to the other family members or approach the apartment.

264. John Does 2 and 4 had no reasonable suspicion that Eduardo had violated any laws, or that he posed a threat to John Does 2 and 4 or any other officer. This is especially clear because officers had interrogated him the day before. Eduardo complied with all of the officers' commands.

265. John Does 2 and 4 violated Eduardo's Fourth Amendment right to be free from unreasonable seizures.

266. As a result of this conduct, John Does 2 and 4 are liable for Eduardo's injuries.

**Count XVIII: Unreasonable Search and Seizure- Excessive Force in Seizure of Eduardo on April 11, 2017**
**(Against Defendant John Does 2 and 4)**

267. Plaintiffs hereby incorporate the allegations above as if fully made herein.

268. John Does 2 and 4 used a show of authority to restrict Eduardo's movements, John Doe 4 pointed his assault weapon at Eduardo, and John Doe 2 ordered him to stand in a particular place and refused to let him speak to the other family members or approach the apartment. The officers mocked and harassed him.

34

269. John Does 2 and 4 had no reasonable suspicion that Eduardo had violated any laws, or that he posed a threat to John Does 2 and 4 or any other officer. This is especially clear because officers had interrogated him the day before. Eduardo complied with all of the officers' commands.

270. John Does 2 and 4 violated Eduardo's Fourth Amendment right to be free from unreasonable seizures.

271. As a result of this conduct, John Does 2 and 4 are liable for Eduardo's injuries.

**Count XIX: Unreasonable Search and Seizure- Excessive Force in Seizures on April 11, 2017**
**(Against Defendants Reddish and John Does 2 and 4)**

272. Plaintiffs hereby incorporate the allegations above as if fully made herein.

273. Reddish and John Does 2 and 4 interrogated the family in Carlos and Bernice's apartment at the end of the second raid. They used curse words and harsh language in loud voices in the presence of the children.

274. Reddish and John Does 2 and 4 had no reasonable suspicion that the family had violated any laws, and knew the family posed no threat to them. None of the family members did anything but comply fully with the officers' commands. The harsh language and raised voices were meant to scare and intimidate, and had no legitimate law enforcement purpose, especially as this incident occurred at the end of a prolonged search.

275. Reddish and 2 and 4 violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizures.

276. As a result of this conduct, Reddish and John Does 2 and 4 are liable for Plaintiffs' injuries.

**Count XXI: Unreasonable Search and Seizure- Unlawful Seizure of Abel Jr. on April 11, 2017**
**(Against Defendants John Does 2, 28, and 29)**

277. Plaintiffs hereby incorporate the allegations above as if fully made herein.

278. Defendants John Does 2, 28, and 29 used physical force and a show of authority to restrict Abel Jr.'s freedom of movement, and interrogated him. John Does 2, 28, and 29 refused to allow Abel Jr. to shut his apartment door, ordered him to stand in the parking lot, and interrogated him.

279. John Does 2, 28, and 29 violated Abel Jr.'s Fourth Amendment right to be free from unreasonable seizures.

280. As a result of this conduct, John Does 2, 28, and 29 are liable for Abel Jr.'s injuries.

### Count XXII: Unreasonable Search and Seizure- Unlawful Seizure of Carlos on April 11, 2017 (Against Defendant Reddish)

281. Plaintiffs hereby incorporate the allegations above as if fully made herein.

282. Reddish used a show of authority to restrict Carlos's freedom of movement. Reddish approached Carlos as he got out of his car, refused to let him speak to Berenice or the other family members, and interrogated him.

283. Reddish violated Carlos's Fourth Amendment right to be free from unreasonable seizures.

284. As a result of this conduct, Reddish and is liable for Carlos's injuries.

### Count XXIII: Conspiracy to Violate Constitutional Rights

285. 42 U.S.C. Section 1985(3) provides that if two or more persons conspire for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

286. Plaintiffs hereby incorporate the allegations above as if fully made herein.

287.     Defendants, who are officers with the Salt Lake City ICE Field Office and the Salt Lake City U.S. Marshal office acted jointly in concert, as co-conspirators, to conduct the unreasonable and unlawful searches and seizures described above, and to do so using excessive force.

288.     Defendants evinced animus towards Plaintiffs because of their ethnicity, and national origin. Various Defendants: asked why the family didn't just go back to Mexico; taunted the family about the cartels in Mexico,;and told Carlos that he "watched too much Univision" when he asked to see a warrant.

289.     In doing so, Defendants, as co-conspirators, conspired to accomplish an unlawful purpose by and unlawful means. With the purpose of intimidation and illegally obtaining evidence by depriving Plaintiffs of their Fourth and Fourteenth amendment rights to be free from unreasonable searches and seizures, and from excessive force.

290.     In furtherance of their conspiracy, each of the Defendants, as co-conspirators, committed overt acts and were otherwise willful participants in joint activity.

291.     The misconduct was objectively unreasonable and was undertaken intentionally, with malice, and with reckless indifference to the rights of others, and in total disregard for Plaintiffs' clearly-established constitutional rights.

292.     Defendants' conspiracy was a proximate cause of the injury to the Plaintiffs and cause the deprivation of Plaintiffs' constitutionally protected rights, under the Fourth and Fourteenth Amendments of the United States Constitution.

293.     As a result of Defendants' misconduct and in furtherance of their conspiracy, Plaintiffs suffered loss of liberty, great mental anguish, humiliation, physical and emotional pain and suffering, economic damages, and other grievous and continuing injuries and damages.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants and award the following:

A.  A declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants' search, seizure, and questioning of Plaintiffs was a clear violation of Plaintiffs' Fourth Amendment rights;

B.  Award Plaintiffs compensatory damages in an amount to be proven at trial;

C.  Hold Defendants jointly and severally liable for compensatory damages in an amount to be proven at trial;

D.  Award Plaintiffs punitive damages against each Defendant in an amount to be proven at trial;

E.  Award Plaintiffs the cost of this action and reasonable attorney fees; and

F.  Award such other relief as the court deems just and proper.

**JURY DEMAND**

Plaintiffs demand trial by jury on all issues as to which a jury is available.

Dated: February 27, 2017                    Respectfully submitted,

                                        /s  Leah Farrell_____

| | |
|---|---|
| John Mejia (Bar No. 13965) | S. Starling Marshall* |
| Leah Farrell (Bar No. 13696) | Bruce Bennett* |
| ACLU of Utah Foundation, Inc. | COVINGTON & BURLING |
| 355 North 300 West | 620 Eighth Avenue |
| Salt Lake City, UT 84103 | New York, New York 10018-1405 |
| T: (801) 521-9862 | Tel: (212) 841-1000 |

jmejia@acluutah.org
lfarrell@acluutah.org

Lee Gelernt*
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor New York, NY
10004
T: (212) 549-267
lgelernt@aclu.org

Fax: (212) 841-1010
smarshall@cov.com
bbennett@cov.com

Rebecca G. Van Tassell (Bar No. 14822)
COVINGTON & BURLING
1999 Avenue of the Stars
Los Angeles, California 90067
Tel: (424) 332-4800
Fax: (424) 332-4749
rvantassell@cov.com

Christopher Denig*
Jessica Arco*
Bradley Markano*
COVINGTON & BURLING
One City Center
850 10th Street, NW
Washington, D.C. 20001
Tel: (202) 662-6000
Fax: (202) 662-6302
cdenig@cov.com
jarco@cov.com
bmarkano@cov.com

Yiye Fu*
COVINGTON & BURLING
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Tel: (650) 632-4700
Fax: (650) 632-4800
yfu@cov.com

*Attorneys for Plaintiffs*

*pro hac vice* application forthcoming