IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(CENTRAL DIVISION)

| | |
|---|---|
| ABEL RAMIREZ, *et al.*, | HON. DAVID M. EBEL |
| | HON. MICHAEL E. HEGARTY |
| Plaintiffs, | (SITTING BY DESIGNATION) |
| v. | Civil Action No. 2:18-CV-176-DME |
| WALTER BOCKHOLT, *et al.*, | ORDER ON PENDING MOTIONS |
| Defendants. | |

On Defendants' motion for summary judgment, Judge Ebel permitted this case to go to trial concerning (1) an unlawful entry on April 10, 2017 into both apartment A103 (Plaintiffs Alicia Amaya Carmona, Carlos Ramirez, Berenice Resendiz, and the four minor Plaintiffs) and (2) A104 (Plaintiffs Abel Jr. and K.F.), as well as (3) an unlawful entry on April 11, 2017 into A103 (Plaintiffs Alicia Amaya-Carmona, Berenice Resendiz, three minor Plaintiffs, and Carlos Ramirez). Both sides have filed Motions under Fed. R. Evid. 702 concerning experts and motions *in limine*.

Many of the following Motions were fully briefed prior to Judge Ebel's ruling, and I have tried to apply the relief sought to the claims currently pending. I will not repeat Judge Ebel's thorough factual background but certainly acknowledge that it informs the following rulings.

I. **Defendants' Partial Motions to Exclude Expert Testimony of Dr. Stephen Golding**

The Court considers the Motions (ECF 192/194) (filed and briefed by the United States Department of Justice, joined in a separate filing by the Utah Attorney General), Plaintiffs' Opposition (ECF 208), Defendants' Reply (ECF 227), Defendants' Supplemental Brief in Support

(ECF 272), Plaintiffs' Brief in Opposition to Defendants' Supplemental Motion (ECF 279), and Defendants' Omnibus Reply (283). Dr. Golding is a forensic psychologist retained by Plaintiffs to testify about emotional harm suffered by Plaintiffs Carlos Ramirez (Carlos) and Abel Ramirez, Jr. (Abel Jr.). Dr. Golding has opined that both suffered emotional harm, but Dr. Golding believes Carlos suffered from Post-Traumatic Stress Disorder (PTSD) because of the events underlying this case, while Dr. Golding does not make that finding for Abel Jr.

Defendants originally fashioned the Motion to Exclude Dr. Golding as "partial" because, while it sought to exclude *any* testimony on behalf of the parties who retained him (the Plaintiffs), Defendants also intended to "reserve their right to call Dr. Golding as a witness in their own case-in-chief to testify about Abel Jr. and Eduardo." ECF 192 at 2 n.1. When they filed their Motion to Exclude Dr. Golding, Defendants believed that Dr. Golding was only going to testify concerning Carlos and not the other Plaintiffs. The subsequent briefing established that Plaintiffs would also elicit testimony concerning Abel Jr. from Dr. Golding. Defendants then included in their briefing a request to exclude Dr. Golding's proposed testimony about either Plaintiff.

My analysis under Rule 702 first determines whether an expert is qualified by knowledge, skill, experience, training or education sufficient to render an opinion on the facts of the case before me; if so, I must determine whether the expert's opinions are reliable. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009).

Defendants contend that Golding should be excluded because his opinions are neither reliable under Fed. R. Evid. 702, nor tied to any fact that "is of consequence in determining the action." Fed. R. Evid. 401(b). First, Defendants contend Dr. Golding based his opinions concerning Carlos on "two maneuvers" in which Defendant Reddish engaged: a threat that Carlos' children would be removed if Abel Ramirez, Sr. (Abel Sr.) (the subject of the arrest warrant in this

2

case) did not come home and cooperate, and a statement that Reddish had the power to save Carlos' mother from deportation if Carlos cooperated in locating Abel Sr.  Defendants argue that (1) the "two maneuvers" are irrelevant to any pleaded claim, and (2) the threat to take the children is factually fictitious. As to the latter, I believe the record creates a sufficient fact dispute concerning what was said and its reasonable interpretation and, therefore, cannot serve as a basis for excluding Dr. Golding.  As to the former, I believe that, while the "two maneuvers" are not pleaded claims, they are fact allegations by the Plaintiffs, are tied to the res gestae of what happened at the Ramirez residence, and are appropriate for the jury's consideration.  In the main, Defendants' arguments go to the credibility and weight of Dr. Golding's testimony, but not its admissibility.  Any limitation based on the claims for which Dr. Golding's testimony is relevant can be handled by Judge Ebel through jury instructions given during or at the conclusion of the trial.

Dr. Golding's opinions concerning Abel Jr. do not depend on the "two maneuvers."  I find no other basis to exclude Dr. Golding's opinion concerning Abel Jr.

Finally, addressing Defendants' argument that Dr. Golding's opinions do not "link any diagnosed psychological injury to any particular remaining claim or defendant," ECF 283 at 1, I believe at the pretrial stage, this argument attempts to parse too finely and segregate too cleanly issues that, at trial, are inherently not segregable.  As noted above, the connection that Dr. Golding's testimony has to the claims that will be tried will have to be explained to the jury in appropriate limiting instructions.

## II. Defendants' Motions to Exclude Expert Testimony of Timothy Longo

The Court considers the Motions (ECF 193/194) (filed and briefed by the United States Department of Justice, joined in a separate filing by the Utah Attorney General), Plaintiffs' Opposition (ECF 209), Defendant's Reply (ECF 228), Defendants' Supplemental Brief in Support

3

(ECF 273), Plaintiffs' Brief in Opposition to Defendants' Supplemental Motion (ECF 282), and Defendants' Omnibus Reply (ECF 283).  Plaintiffs proffer Timothy Longo as an expert in law enforcement, police activity, and police administration and supervision.  Defendants contend that his proffered areas of expertise are overly broad, his conclusions are both irrelevant and constitute legal opinions, and he lacks sufficient training and experience to render opinions concerning the federal fugitive task force's conduct underlying this case.

Longo is the retired chief of police (2016) in Charlottesville, Virginia and a lawyer.  He spent approximately thirty-five years in local law enforcement.  He has no work experience in federal law enforcement and, more specifically, investigation and apprehension of illegal immigrants.  He served his last warrant more than twenty years ago. Most of the seven opinions to which Defendants point in their Motions reference both the reasonableness of the Defendants' conduct before and during the attempted execution of the warrant in this case, as well as Defendants' violation of "generally accepted law enforcement practices" (relying on the Constitution and United States Supreme Court precedent as his source).  He also opines about Defendant Reddish's post-incident reporting.

Defendants contend Longo is not qualified because of his dearth of experience in federal law enforcement generally and apprehension of illegal immigrants specifically.  As one example, Defendants state that Longo criticizes Defendants for not running license plate numbers to determine the presence in the parking lot of Abel Sr.'s vehicle while not considering that persons not legally in the United States are unlikely to register vehicles in their own name.  Defendants also challenge the reliability of Longo's opinions because of his revision of his "materials considered" after his deposition and because of his failure to consider key facts (testimony of two

4

third-party witnesses) in forming his opinions. Finally, Defendants object to Longo's opinions to the extent they constitute impermissible legal conclusions.

In attacking his qualifications, Defendants rely primarily on *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001), in which the Tenth Circuit affirmed the district court's rejection of an orthopedic surgeon because she did not have experience with the particular surgical procedure or device at issue in the case. I believe the facts in *Ralston* are too dissimilar to the present case to make it of precedential value. Defendants also cite the *Milne* opinion by Judge Ebel (the presiding judicial officer in this case), which involved a claim that the organizers of a mountain bike race were grossly negligent. In that case a race participant struck an SUV and trailer on the six-mile open course portion of the race. The court held that because the expert "had no experience in organizing, supervising, or studying mountain bike races [he] . . . was not qualified to offer expert testimony on the standard of care for mountain bike races." 575 F.3d at 1133 The proffered expert did have experience in paved road bike races, but critical to the court's analysis was the fact that fundamentally different rules applied to the two types of bicycle races. The court also found his opinions unreliable because he did not even base his opinions on any research into road bike races "but relied almost exclusively on his experience in paved road racing." *Id.* at 1134.

I do not find Defendants' general federal/state dichotomy argument persuasive. Good police work is the same at both the state and federal levels, and these officers commonly work side by side on task forces and otherwise. More germane is Longo's lack of experience in investigating and apprehending illegal immigrants. The distinctions pointed out by Defendants are material and certainly closer to the road bike/mountain bike analogy. If this were a case about the limited detention of any of the Plaintiffs based on their immigration status, I would agree with Defendants'

5

argument. However, Judge Ebel's decision on summary judgment has narrowed this case to very specific Fourth Amendment violations, concerning which I believe Longo is qualified to testify. Thus, he passes the first part of the Rule 702 test. However, Judge Ebel will limit his opinions to those relevant to the remaining claims. For example, any opinions concerning using Alicia as a bargaining chip, her or Eduardo's seizures, Reddish's reporting, unlawful force, or any opinion at all relating to a violation of the Federal Tort Claims Act, no longer appear relevant. As noted by Defendants, only Longo's first and second opinions seem relevant now. Further outlining the precise parameters of Longo's admissible opinions is impractical here and must await his testimony at trial.

Concerning reliability, Defendants' argument—that expert testimony of any kind is unnecessary in this case—is overstated. They rely on *United States v. Brown*, 871 F.3d 532, 534 (7th Cir. 2017), a criminal case in which the Defendant, a Chicago police officer, sought to introduce expert testimony about police standards. The facts involved Brown brutally assaulting a convenience store employee for no apparent reason. The court stated that no expert testimony about police reasonableness was necessary because the Defendant "hit a motionless man in the face with his fist and continued to beat and kick him before placing him under arrest." *Id.* at 539. Such a case lacks any complexity. "But when 'something peculiar about law enforcement (e.g., the tools they use or the circumstances they face) informs the issues to be decided by the finder of fact,' a juror's everyday experience may not be enough to effectively assess reasonableness." *Id.* at 538 (citation omitted). The present case is more akin to the latter than the former. Further, they rely on *Marquez v. City of Albuquerque*, 399 F.3d 1216 (10th Cir. 2005), which I find distinguishable. First, the court applied the normal abuse of discretion standard in reviewing the district court's exclusion of a use-of-force expert, and its analysis appeared to indicate that the

issue was close even on that standard, and a decision either way by the district court would have been affirmed. Second, the expert had an opinion that police should always use the minimum force necessary in an arrest, which is not the Fourth Amendment standard. The court did not state any principle that expert witnesses should not be used in Fourth Amendment cases. Moreover, the potential confusion that might occur in light of the fact that violation of law enforcement standards is not *ipso facto* a Fourth Amendment violation can be avoided with proper cross examination and jury instructions.

Finally, Plaintiffs do not dispute that Longo may not render opinions about the constitutionality of any of Defendants' actions, or even that he may not couch his testimony in terms of the "reasonableness" of the Defendant officers' conduct, which Defendants point out "is of course the hallmark of Fourth Amendment jurisprudence." As long as Longo confines his opinions to "generally accepted law enforcement practices" or an equivalent standard, I believe he has admissible testimony to offer.

### III.     Defendants' Motion *In Limine* No. 1 Regarding Fifth Amendment

The Court considers the Motion (ECF 214), Plaintiffs' Opposition (ECF 235), and Defendants' Reply (ECF 244). Defendants seek certain consequences of Plaintiffs' various invocations of the Fifth Amendment right to remain silent.

First, Defendants seek confirmation that Plaintiffs are bound by their prior invocations of the Fifth Amendment and may not testify at trial in a manner inconsistent with those invocations (*i.e.*, may not use the Fifth Amendment as a shield during discovery and then do an about face at trial). Plaintiffs confess this portion of the Motion ("Plaintiffs have never attempted to withdraw their invocations of the Fifth Amendment or to otherwise alter their testimony, and do not seek to do so now."), but point out that if Plaintiffs are asked materially different questions at trial than

7

those that drew a Fifth Amendment response during discovery, they reserve their right to answer or to again invoke the Fifth Amendment. They also argue that only certain questions posed by the Defendants are relevant to any issue in this case, as noted below.

Defendants next seek to introduce the Fifth Amendment invocations by playing portions of Plaintiffs' video-recorded depositions and reading into the record Plaintiffs' written responses to selected requests for admission. These proffers are contained in Exhibit A to the Motion (ECF 214-1). If admitted, Defendants would seek an adverse inference instruction as to each invocation. Defendants cite *In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 153 (2d Cir. 2019) in support of their contention that Plaintiffs' prior invocation of the Fifth Amendment may be presented to the jury.

The *650 Fifth Ave.* case is inapposite. That suit involved several members of a board of directors who refused to submit to depositions whatsoever, on the basis of the Fifth Amendment. In such a situation, it is a straightforward matter to inform the jury that a particular witness refused to testify at all during discovery. The present situation is profoundly different. Here, it is my understanding that no Plaintiff refused to testify, but rather, invoked the Fifth Amendment concerning certain questions.

Defendants request that for each Plaintiff witness, apparently at the beginning of such person's cross examination, defense counsel be permitted to play deposition excerpts and read responses to requests for admission restating that witness's invocation of the Fifth Amendment during discovery. Defendants' proposed solution would create a sideshow of the Fifth Amendment responses, disproportionately focusing the jury, for each witness, on what happened during discovery rather than what evidence is being presented live at trial. I believe there is a more appropriate approach.

First, concerning the introduction of prior deposition testimony, "under Fed.R.Civ.P. 32(a)(2), the deposition of a party, whenever taken, generally may be used against him at trial for any purpose." *Gracia v. Lee*, 976 F.2d 1344, 1345 (10th Cir. 1992). This Rule is subject to the limitations of Fed. R. Evid. 403 (governing prejudice, confusion, or waste of time) and 611 (controlling the mode and order of evidence). *Id.* Whether Defendants should be permitted to play the video depositions of Plaintiffs is a question that should be raised with Judge Ebel at the trial preparation conference, at which issues of this type are typically handled. *E.g.*, *Dennis v. Progressive N. Ins. Co.*, No. CIV-17-182-SLP, 2018 WL 4871039, at *9 (W.D. Okla. Apr. 9, 2018) ("Plaintiff is correct that Fed. R. Civ. P. 32(a)(3) permits the use of Mr. Jordan's deposition testimony even if Mr. Jordan is present at trial. But such use remains subject to the Court's discretion. Again, the Court reserves any ruling on this matter for trial."). That will permit Judge Ebel to consider the playing of deposition testimony in the context of the overall trial, including the timeframe in which the trial is set, weighing the interests of the jury in an efficient trial (particularly during the current COVID-19 pandemic), and other Rule 611 considerations.

As for reading the admissions into evidence, I believe it is more appropriate for defense counsel to ask the witness a question and, if it be so, have the witness invoke the Fifth Amendment in the presence of the jury. Judge Ebel can then effectively rule on the relevance of the question and develop a better record for whether to submit an adverse inference instruction to the jury.

For these reasons, Defendants' Motion is granted as to Plaintiffs' being bound by their prior testimony, denied insofar as Defendants seek to read into the record in the presence of the jury each Plaintiff's invocation of the Fifth Amendment in response to requests for admission, and denied without prejudice (for re-raising at the trial preparation conference or during trial) regarding the request to play any party's deposition video and to submit an adverse inference instruction to

the jury.  Further, in the event any Plaintiff testifies at trial in violation of this ruling and provides substantive evidence in response to a question as to which that Plaintiff previously invoked the Fifth Amendment, Judge Ebel can decide on an appropriate consequence (if any).  Further, nothing in this Order precludes the use of responses to discovery, or deposition testimony, for impeachment, to demonstrate prior inconsistent testimony, or other lawful evidentiary purpose.

> **IV.     Defendants' Motion *In Limine* No. 2 to Exclude Evidence of Other Lawsuits and Unrelated Misconduct.**

The Court considers the Motion (ECF 215), Plaintiffs' Opposition (ECF 236), and Defendants' Reply (ECF 245).  Defendants seek to exclude any evidence of a prior lawsuit involving Defendant Reddish and any prior unrelated complaints made against any Defendant or the U.S. Marshals Service task force.  I agree with the premise of the Motion, that such evidence is inadmissible character evidence, and, in any event, Plaintiffs do not object to exclusion of the *specific* prior incidents/complaints referenced by Defendants (unless the door is opened at trial). Plaintiffs do object to a ruling that would bar "any prior, pending, or alleged misconduct unrelated to the events of April 10 and 11, 2017."  Because I have no basis for determining everything that might be relevant at trial, I cannot disagree with that general proposition and will leave it to Judge Ebel to determine at trial should anything of that nature arise.

Therefore, this Motion is granted.

> **V.     Defendants' Motion *In Limine* No. 3 to Exclude Reference to Indemnification and the *Bivens* Defendants as "the Government"**

The Court considers the Motion (ECF 216), Plaintiffs' Opposition (ECF 237), and Defendants' Reply (ECF 246).  The nature of the Motion is explained by the title.  Plaintiffs agree they cannot refer to the matter of indemnification of the Defendants by the United States of America.  As to the latter point, again, Plaintiffs agree in concept that they cannot equate persons

10

who may be liable in their individual capacity as "the government." But Plaintiffs also make the commonsense observation that references to an agency of the United States or the State of Utah may incidentally occur in this trial which is, *of course*, the truth.

Therefore, this Motion is granted to the limited extent that, at trial, Plaintiffs may not deliberately engage in an effort to persuade the jury, directly or indirectly, that the United States Treasury will pay any judgment. I will leave it to Judge Ebel to make game-time decisions on whether any particular reference or insinuation crosses the line.

### VI. Defendants' Motion *In Limine* No. 4 to Exclude Evidence or Argument Regarding Abstract Value of a Constitutional Violation

The Court considers the Motion (ECF 217), Plaintiffs' Opposition (ECF 238), and Defendants' Reply (ECF 247). Defendants state that "[i]n a constitutional tort suit, a plaintiff is not entitled to compensatory damages merely by showing that the defendant violated a clearly established constitutional right; he must show actual damages." Plaintiffs do not disagree with this proposition. Plaintiffs do seek to introduce evidence of emotional damages arising from the alleged "violation of their dignity interests," as well as other noneconomic (compensatory) damages. Defendants do not disagree with this proposition.

This Motion is granted.

### VII. Defendants' Motion *In Limine* No. 5 to Exclude Evidence Regarding Purportedly Inadequate Training or Violations of Policy and Procedure

The Court considers the Motion (ECF 218), Plaintiffs' Opposition (ECF 239), and Defendants' Reply (ECF 248). Defendants request, and Plaintiffs do not oppose, excluding substantive evidence of the policies and procedures of the United States Marshals Service. Plaintiffs seek to preserve their ability to use policies and procedures to rebut or impeach direct testimony or argument that Defendants complied with their own procedures in their conduct on

April 10-11, 2017, a premise that is preserved within the Federal Rules of Evidence. Further, Plaintiffs argue that evidence concerning agency policies and procedures "is relevant because it is probative of the planning of the operation, how the operation was conducted, the Individual DOJ Defendants' state of mind, the haste of the raid and the steps taken prior to the raid." This statement was made prior to Judge Ebel's order on summary judgment. The only issues left are whether the entry into A103 and A104, and the scope of the searches, were violations of the Fourth Amendment. In my view, such evidence is no longer relevant. The jury will be judging the reasonableness of the Defendants' actions at the time of the searches, in light of the then-existing knowledge of the Defendants. To the extent some currently unforeseeable use of evidence of adherence to internal policies and procedures has any relevance whatsoever to issues that arise at trial, Judge Ebel can deal with it at that time.

This Motion is granted.

### VIII. Defendants' Motion *In Limine* No. 6 to Exclude Evidence of Plaintiffs' Moving Costs, Lost Wages, and Injuries Suffered at Colorado Detention Center

The Court considers the Motion (ECF 219), Plaintiffs' Opposition (ECF 240), and Defendants' Reply (ECF 249). Defendants seek to exclude evidence that certain Plaintiffs lost security deposits at their apartment, and incurred moving costs, when they purportedly moved out due to the emotional distress of what happened there on April 10-11, 2017; and that the constitutional violations caused lost wages of Ms. Resendiz and Eduardo because Ms. Resendiz had to stay at home to take care of children previously cared for by Alicia (who was sent to detention in Denver, Colorado). Plaintiffs argue that Defendants are in reality seeking a merits determination on damages, an opportunity they lost when they did not include this issue with briefing on the already-decided motion for summary judgment.

To the extent Defendants argue that Plaintiffs' claimed damages at trial may not exceed what is established by the evidence, I agree. For example, Defendants state that Ms. Resendiz had a security deposit of $500.00 yet seeks $2900.00. Insofar as Defendants argue that there is no material issue of disputed fact concerning some claim for damages by Plaintiffs, they are seeking a ruling in the nature of summary judgment. I will leave such a dispositive ruling for Judge Ebel at trial. It is common for the jury instructions to outline the precise source(s) of damages that the jury may consider in its deliberations. Often, evidence of certain types of damages have come up at trial, but the court does not include that category of damages in the instructions because of some dispositive reason under the law. Furthermore, Judge Ebel's ruling on summary judgment may have sufficiently changed the landscape such that Plaintiffs' claims for damages may look quite different at trial than they otherwise would have.

The Motion is denied without prejudice.

## IX.     Plaintiffs' Motion *In Limine* No. 1 to Exclude References to Criminal History of Plaintiff Carlos Ramirez

The Court considers the Motion (ECF 220), the federal Defendants' Opposition (ECF 229), the state Defendants' opposition (241), and Plaintiffs' Reply (ECF 250). The topic of the Motion is clear from its title. The charge at issue was assault with a deadly weapon which was pleaded to a disorderly conduct misdemeanor. Prior to the April 10-11, 2017 attempts to apprehend Abel Sr., Defendant Reddish ran a criminal history and determined Abel Sr. and Carlos were both charged with the felony noted above. Abel Sr. also pleaded guilty to a disorderly conduct misdemeanor. Defendants have stated in their response that only criminal history they would seek to introduce is Carlos' arrest for aggravated assault with a weapon. They state that the arrest history in the underlying criminal case alleges Abel Sr. drew a knife and Carlos drew a gun. They further state

that in the oral briefing preceding the attempted arrest of Abel Sr., Reddish informed the other members of the group of this information.

The only relevance upon which Defendants rely in seeking to introduce this evidence is to put in context "the amount of force they used or showed on the dates in question." The excessive force claim is no longer in this case, and whatever probative value the arrest might have once had is now substantially outweighed by its potential prejudicial effect. Indeed, I doubt that, in light of Judge Ebel's order on summary judgment, Defendants would even intend to use this evidence.

The Motion is granted.

### X. Plaintiffs' Motion *In Limine* No. 2 to Exclude References to April 11, 2017 Conversation Regarding the United States Marine Corps

The Court considers the Motion (ECF 221), the federal Defendants' Opposition (ECF 230), the state Defendants' opposition (241), and Plaintiffs' Reply (ECF 251). Defendants assert on the evening of April 11, 2017, Eduardo stated he had been in the United States Marine Corps, while Eduardo asserts that he stated he had applied to the Corps but was rejected because of his immigration status. Eduardo is no longer a party; therefore, the statement is hearsay for which I find no exception. Moreover, Defendants assert that the statement is relevant to the claims of excessive force and unlawful seizure, which are no longer in the case. Now that Eduardo is, at most, a witness who will testify at trial, any possible grounds for admission of this statement, and its probative value, are substantially outweighed by its prejudicial effect under Rule 403.

The Motion is granted.

### XI. Plaintiffs' Motion *In Limine* No. 3 to Exclude Media Materials After April 11, 2017

The Court considers the Motion (ECF 222), the federal Defendants' Opposition (ECF 231), the state Defendants' opposition (241), and Plaintiffs' Reply (ECF 252). After the incidents in this

14

case, Plaintiffs made several statements to the media. Defendants contend there are two aspects of these statements relevant to this case. First, at least one statement by Carlos to the media is contradicted by his later deposition testimony (which Plaintiffs assert is based on a mistranslation of the media discussion). Second, Plaintiffs' willingness to speak to the press casts doubt on the strength of any claim they were emotionally traumatized by the events of April 10-11, 2017.

Specific statements by the Plaintiffs to the media should be excluded at trial. Regarding Defendants' argument that some of the statements might be useful for establishing one or more of Plaintiffs' inconsistent versions of what happened on April 10-11, 2017, Plaintiffs' credible assertion that, at least as to Carlos, this was a mistranslation, means that this would set up a trial sideshow of Spanish-English interpretation, thereby completely overshadowing any limited value of the statements. Moreover, Defendants' attempt to use the statements to diminish damages is of dubious relevance, and whatever subtle implication Plaintiffs' willingness to speak to the press might have on their claim for emotional damages is substantially outweighed by the potential prejudice of admitting contested translations.

The Motion is granted.

### XII. Plaintiffs' Motion *In Limine* No. 4 to Preclude Questions Regarding Abel Sr.'s Location and Exclude References to Plaintiffs' Invocation of the Fifth Amendment in Response to such Questions

The Court considers the Motion (ECF 223), the federal Defendants' Opposition (ECF 232), the state Defendants' opposition (241), and Plaintiffs' Reply (ECF 253). I have already dealt with the matter of Defendants' intended use, at trial, of Plaintiffs' discovery invocations of the Fifth Amendment. The current motion, therefore, involves whether defense counsel may, at trial, bring up the subject of Abel Sr.'s whereabouts on April 10 and 11, 2017, what the Plaintiffs knew concerning his whereabouts, and whether they truthfully responded to questions from law

enforcement on those two days. Plaintiffs contend that questions on this topic should be excluded under Rule 403, because requiring Plaintiffs to invoke the Fifth Amendment in front of the jury would be unfairly prejudicial.

I do not believe the issue of Abel Sr.'s whereabouts on April 10-11, 2017 can be sanitized from this case. All events of those days arose because Defendants did not know where he was, and they were looking for him. Trying to meander around this topic, and Defendants' questioning of Plaintiffs at the scene, would be impossible to police at trial, and would inevitably, in my opinion, cause juror confusion. The Defendants were looking for Abel Sr., they asked questions, Plaintiffs gave responses, and Defendants searched two apartments. *All* these occurrences go to the heart of this lawsuit. I agree that the Plaintiffs' invocation of the Fifth Amendment at trial in response to questions concerning the whereabouts of Abel Sr. will be potentially prejudicial, but not unfairly so under Rule 403. In the event a cautionary instruction is appropriate to inform the jury how they can make use of the Plaintiffs' invocation of the Fifth Amendment, Judge Ebel can determine this at the appropriate time.

The Motion is denied.

### XIII. Plaintiffs' Motion *In Limine* No. 5 to Exclude References to Immigration Status

The Court considers the Motion (ECF 224), the federal Defendants' Opposition (ECF 233), the state Defendants' opposition (241), and Plaintiffs' Reply (ECF 254). Plaintiffs seek to exclude reference to their respective statuses under the immigration laws. As a general premise, I agree. However, as with Plaintiffs' Motion *In Limine* No. 4, this lawsuit will inherently involve immigration law as an underlying theme. No one can anticipate all nuances of the topic of immigration that could arise at trial. The parties' briefs are not particularly helpful in defining the parameters of any permissible use of the topic of immigration. For example, Plaintiffs concede

Alicia's immigration status would be admissible for damages, but I believe they intended this to apply to her former claim for unlawful arrest. Like several other evidentiary aspects of the parties' motions, I believe this decision must await trial so that Judge Ebel can determine the context of any reference to immigration status.

This Motion is denied without prejudice.

### XIV. Plaintiffs' Motion *In Limine* No. 6 to Limit Dr. Goldstein's Opinions to His Report

The Court considers the Motion (ECF 225), the federal Defendants' Opposition (ECF 234), the state Defendants' opposition (241), and Plaintiffs' Reply (ECF 255). The topic of the Motion is adequately described in its title. Defendants do not oppose the premise. Dr. Goldstein will not be permitted to render opinions at trial that were not provided in his disclosures. To this extent, the Motion is granted. Beyond this narrow ruling, Judge Ebel is certainly able to supervise the scope of an expert's testimony at trial.

### XV. State Defendants' Motions *In Limine*

The Court considers the Motion (ECF 226). Defendants Ferron and Roothoof join in the federal Defendants' Motion *in Limine* Nos. 1-6. My rulings on those motion shall apply to all Defendants.

### XVI. Defendants' Motions to Exclude Expert Testimony of Dr. Jonathan D. Bone and Dr. Douglas Goldsmith

The Court considers the Motions (ECF 275/276/277), Plaintiffs' Oppositions (ECF 280/281), and Defendants' Reply (ECF 283). These post-summary judgment Motions seek to exclude Plaintiffs' damages experts based on the inability of the experts to distinguish between emotional harm caused by actions that will be tried by the jury in this case, and those that will not. The fundamental premise of the Motions is that expert testimony of the type proffered by Drs.

Bone and Goldsmith must necessarily causally connect emotional harm to the alleged constitutional violations that will be tried; and if the experts cannot do that, such testimony might lead to the jury awarding damages for claims for which Defendants have qualified immunity.

Defendants make a valid point about the potential that the jury will not be able to parse damages for recoverable conduct from unrecoverable conduct. However, in the balancing of interests, this is a necessary risk and one that will be handled by Judge Ebel at trial. To completely bar Plaintiffs' damages experts would deprive them of some of the most important evidence they have. The experts' testimony does relate solely to damages and not liability, but Defendants take the firm position that liability and damages must be tried together. ECF 233 at 2. Almost always in a civil rights case, when some claims are dismissed pretrial, the type of opinions the medical experts have previously reached and to which they will testify at trial become more difficult to officiate at trial, but it has to be done.

These Motions are denied.

### XVII. Conclusion

Incorporating all limitations, conditions, and explanations described above, I adjudicate the Motions as follows:

- Defendants' Partial Motions to Exclude Expert Testimony of Dr. Stephen Golding [filed January 24, 2020; ECF 192, 194] are **denied**;
- Defendants' Motions to Exclude Expert Testimony of Timothy Longo [filed January 24, 2020; ECF 193, 194] are **denied**;
- Defendants' Motion *In Limine* No. 1 Regarding Fifth Amendment [filed March 19, 2020; ECF 214] is **granted in part** and **denied in part**;
- Defendants' Motion *In Limine* No. 2 to Exclude Evidence of Other Lawsuits and Unrelated Misconduct [filed March 19, 2020; ECF 215] is **granted**;
- Defendants' Motion *In Limine* No. 3 to Exclude Reference to Indemnification and the *Bivens* Defendants as "the Government" [filed March 19, 2020; ECF 216] is **granted**;
- Defendants' Motion *In Limine* No. 4 to Exclude Evidence or Argument Regarding Abstract Value of a Constitutional Violation [filed March 19, 2020; ECF 217] is **granted**;

- Defendants' Motion *In Limine* No. 5 to Exclude Evidence Regarding Purportedly Inadequate Training or Violations of Policy and Procedure [filed March 19, 2020; ECF 218] is **granted**;
- Defendants' Motion *In Limine* No. 6 to Exclude Evidence of Plaintiffs' Moving Costs, Lost Wages, and Injuries Suffered at Colorado Detention Center [filed March 19, 2020; ECF 219] is **denied without prejudice**;
- Plaintiffs' Motion *In Limine* No. 1 to Exclude References to Criminal History of Plaintiff Carlos Ramirez [filed March 19, 2020; ECF 220] is **granted**;
- Plaintiffs' Motion *In Limine* No. 2 to Exclude References to April 11, 2017 Conversation Regarding the United States Marine Corps [filed March 19, 2020; ECF 221] is **granted**;
- Plaintiffs' Motion *In Limine* No. 3 to Exclude Media Materials After April 11, 2017 [filed March 19, 2020; ECF 222] is **granted**;
- Plaintiffs' Motion *In Limine* No. 4 to Preclude Questions Regarding Abel Sr.'s Location and Exclude References to Plaintiffs' Invocation of the Fifth Amendment in Response to such Questions [filed March 19, 2020; ECF 223] is **denied**;
- Plaintiffs' Motion *In Limine* No. 5 to Exclude References to Immigration Status [filed March 19, 2020; ECF 224] is **denied without prejudice**;
- Plaintiffs' Motion *In Limine* No. 6 to Limit Dr. Goldstein's Opinions to His Report [filed March 19, 2020; ECF 225] is **granted**;
- State Defendants' Motions *In Limine* [filed March 19, 2020; ECF 226] is **granted** to the extent that all of the Court's rulings on these Motions shall apply to all Defendants; and
- Defendants' Motions to Exclude Expert Testimony of Dr. Jonathan D. Bone and Dr. Douglas Goldsmith [filed September 28, 2020; ECF 275, 276, 277] are **denied**.

Dated at Denver, Colorado this 16th day of December, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge